# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAGENT PHARMACEUTICALS, ) <br> ) <br> Plaintiff, ) <br> ) Case No. 1:25-cv-14080 <br> v. ) <br> ) Judge Charles P. Kocoras <br> FARCO USA, LLC, a Delaware limited ) <br> liability company, ROBERT P. SZURGOT, ) <br> MATTHEW BLASIK, and PETER W. ) <br> JENSEN, ) <br> ) <br> Defendants. ) | |

**Memorandum In Support Of Defendants' Motion To Dismiss Plaintiff's Trade Secrets And Interference Claims (Counts 1, 2, 9 & 10) And All Claims Against Mr. Jensen**

**TABLE OF CONTENTS**

                                                                                                                                            **Page**

INTRODUCTION ............................................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................................. 2

LEGAL STANDARD .......................................................................................................................... 6

ARGUMENT ....................................................................................................................................... 6

      I.      Counts 1 And 2 Must Be Dismissed Because Mere Possession Of Trade Secrets Does Not Violate The DTSA Or ITSA And The Injunctive Relief In Those Counts Seeking To Bar Employment Independently Fails For Inability To Allege Irreparable Harm. ............................ 6

            A.      Plaintiff Fails To Allege Misappropriation. ................................................. 6

            B.      Plaintiffs' Requests In Counts 1 & 2 For An Injunction Barring Work On Glydo Independently Fail For Inability To Allege Irreparable Harm. ......................................................................... 9

      II.     Counts 9 And 10 Should Be Dismissed Because Plaintiff Has Not Satisfied The Elements Of Its Tortious Interference Claims. ............................... 10

            A.      Count 9 Should Be Dismissed Because Plaintiff Fails To Allege That FARCO-PHARMA Breached A Contract With Plaintiff. ....................................................................................................... 10

            B.      Count 10 Should Be Dismissed Because Plaintiff Has Failed To Allege A Reasonable Business Expectancy. ........................... 11

            C.      Count 10 Should Also Be Dismissed For The Additional Reason That Plaintiff Has Not Alleged That It Has Been Damaged By The Termination Of A Business Expectancy ..................... 12

      III.    All Counts Against Mr. Jensen Should Be Dismissed Because Plaintiff Does Not Properly Allege Any Wrongful Conduct By Mr. Jensen. ................................................................................................................... 13

CONCLUSION .................................................................................................................................. 15

i

## INTRODUCTION

Plaintiff Sagent Pharmaceuticals ("Plaintiff" or "Sagent") acknowledges in its complaint that its current contracting partner, FARCO-PHARMA GmbH ("FARCO-PHARMA"), refused to enter into a joint venture with it, and twice tried to terminate their existing contract early. Plaintiff does not allege that the individual Defendants here, Mr. Szurgot, Mr. Blasik, or Mr. Jensen, who are former employees of Plaintiff, have ever or are now trying to usurp that contemplated joint venture with Sagent that FARCO-PHARMA rejected. Indeed, Plaintiff, which develops, manufactures and markets a range of medical products used by hospitals, dialysis centers, and other health care organizations, has not even alleged that these individual Defendants would be capable of any such joint venture. In fact, Plaintiff alleges that the individual Defendants' recently incorporated limited liability company, Defendant Farco USA, LLC ("Farco USA"), has only $30,000 in initial funding.

Nevertheless, Plaintiff is alleging that Mr. Szurgot, Mr. Blasik, and Mr. Jensen are the reason that FARCO-PHARMA tried to terminate its existing License and Supply Agreement ("LSA") with Plaintiff in that the individual Defendants, while working for Sagent, conspired to replace Sagent when the LSA expires. The LSA provides Plaintiff with rights to exclusive distribution of FARCO PHARMA's product GLYDO, a lidocaine jelly used in certain medical procedures, and that agreement is scheduled to terminate on December 31, 2026. To be clear, Plaintiff has not made any allegations indicating anything other than that Plaintiff continues to exclusively distribute GLYDO for FARCO-PHARMA to this day. Nor does Plaintiff allege that any of the Defendants ever distributed a single dose of GLYDO, or any other product, in competition with Plaintiff. Nor does Plaintiff allege that it has any post-employment non-competition agreement with Mr. Szurgot, Mr. Blasik or Mr. Jensen.

Yet, Plaintiff is seeking an injunction barring Mr. Szurgot, Mr. Blasik and Mr. Jensen from working on GLYDO for two years (*in addition* to an injunction prohibiting the use of trade secrets). Plaintiff seeks that injunction solely under Counts 1 and 2 of its complaint, which purport to assert claims under the federal and Illinois trade secrets acts respectively.

Counts 1 and 2, however, should be dismissed because Plaintiff has not pled misappropriation rather than mere possession of trade secrets. In addition, the request for an injunction preventing Mr. Szurgot, Mr. Blasik and Mr. Jensen from working on GLYDO for two years should be dismissed for the separate and independent reason that Plaintiff has not alleged irreparable harm. Counts 9 and 10, for tortious interference with contractual relations and prospective business advantage, respectively, should also be dismissed. Counts 9 and 10 should be dismissed because, among other reasons, Plaintiff has not alleged that FARCO-PHARMA has breached its contract with Plaintiff and Plaintiff has merely alleged that FARCO-PHARMA may stop doing business with Plaintiff when the LSA expires.

Furthermore, all counts against Mr. Jensen should be dismissed because Plaintiff has not properly alleged that Mr. Jensen, who was terminated by Plaintiff back in June of 2024 when his position was eliminated, has engaged in any misconduct.

**FACTUAL BACKGROUND**

Plaintiff Sagent, which operates in the pharmaceutical industry, has brought suit in relation to its business of acting as the exclusive distributor of GLYDO, a lidocaine jelly used during certain medical procedures that is manufactured and supplied by FARCO-PHARMA. Compl. ¶¶ 18-19. In 2010, Plaintiff entered into the LSA with FARCO-PHARMA that gave Plaintiff exclusive distribution rights over GLYDO. *Id*. ¶ 20. The LSA was amended in 2020 to provide for a termination date of December 31, 2026, subject to automatic renewals every two years thereafter unless either party provides written notice prior to the applicable renewal term. *Id.* ¶ 21.

Plaintiff alleges that FARCO-PHARMA twice tried to terminate the LSA prior to its scheduled end date of December 31, 2026. *See id*. ¶¶ 79 & 112. Plaintiff's theory of liability, in its own conclusory terms, is that Mr. Szurgot, Mr. Blasik and Mr. Jensen engaged in "tortious conduct" that involved "planning, conspiring, and implementing a covert scheme to steal [Plaintiff's] business and damage its relationship as the exclusive U.S. distributor for FARCO-PHARMA." *Id*. ¶ 1.

Plaintiff alleges that Mr. Szurgot, who was employed at the time by Plaintiff as Vice President, Specialty Pharmaceuticals, *id*. ¶ 26, and assigned to the FARCO-PHARMA account, engaged in various email, text and in-person communications with two FARCO-PHARMA executives during the fall of 2023 through March of 2024. *Id*. ¶¶ 49-94. Those executives are Marc Vollenbroecker, the Managing Director of FARCO-PHARMA, and Nina Aadahl, FARCO-PHARMA's Manager of International Sales. *Id*. ¶¶ 6 & 24. Plaintiff also alleges that Mr. Blasik, who was employed at Plaintiff as National Sales Director, Urology, at the time, was involved in a few of these communications. *Id*. ¶¶ 51-52, 56-57. In one text to Mr. Szurgot on December 6, 2023, Mr. Vollenbroecker references "your/[Jensen's] business case". *Id*. ¶ 61 (brackets apparently added by Plaintiff's counsel, emphasis removed). Plaintiff alleges that during these fall 2023- March 2024 communications with Mr. Vollenbroecker and Ms. Aadahl, Mr. Szurgot asked for a first draft of a contract, discussed a "business case" and a "loan," and received a draft email that Mr. Vollenbroecker intended to send to Plaintiff terminating the LSA. *Id*. ¶¶ 62-69.

At a meeting on or about January 15, 2024, FARCO-PHARMA and Sagent discussed the possibility of a joint venture, *id*. ¶ 79, but Mr. Vollenbroecker sent an email on January 23, 2024 informing Sagent that the supervisory board rejected the joint venture concept. *Id*. ¶ 79. Attached to that same email, FARCO-PHARMA sent Plaintiff an official termination regarding the LSA,

3

purporting to terminate it on September 30, 2024. *Id*. ¶ 79. Plaintiff alleges that throughout "January and into February 2024, Szurgot was involved in several privileged strategy conversations with members of Sagent's management team, including Sagent's General Counsel and [Vishy Chebrol, Sagent's CEO]." *Id*. ¶ 82.

Plaintiff alleges that on February 1, 2024, Mr. Szurgot sent Mr. Vollenbroecker a text message stating "The plan is to play good cop bad cop with you. [Mr. Chebrol] will be nice while [Sagent's General Counsel] will play tough. He will push back you cannot break agreement until end of 2026. If you want to leave earlier than [sic] you win [sic] have to buy out of the contract. Not sure if you want to start the bad discussion with [Sagent's General Counsel] first or move it to your legal team now." *Id.* ¶ 84 (brackets in Complaint, emphasis removed).

FARCO-PHARMA "backed off" from these "attempts to terminate the LSA prematurely as of September 30, 2024." *Id*. ¶ 91. Plaintiff conclusorily alleges that on "March 14, 2024, Blasik and Szurgot were interviewed as part of an investigation by Sagent. Blasik and Szurgot lied repeatedly about their involvement in the scheme and their (purported) lack of knowledge of FARCO-PHARMA's intentions." *Id*. ¶ 93.

Plaintiff alleges that on March 19, 2025, Mr. Blasik sent an excel document containing Plaintiff's 1500 "hospital division contacts to his personal email account," including names, phone numbers and email addresses. *Id*. ¶ 98. Plaintiff also alleges that Mr. Szurgot, on June 27, 2025, emailed to his personal email account two term sheets between Plaintiff and two of its business partners, which he named "Golf One.docx" and "Golf2.docx," and he used "Golf" on the subject line of the email. *Id*. ¶ 99. Plaintiff alleges that on August 27, 2025 and September 18, 2025, Mr. Blasik downloaded confidential files from his work computer to a USB drive, which included

4

Sagent GLYDO marketing materials, Sagent's Urology Territory Map, its hospital contact list, and an excel titled "Final List Sagent UROLOGY." *Id*. ¶ 107.

Mr. Jensen, who worked at Sagent as Vice President of Finance, had left that company on June 19, 2024, long before Mr. Szurgot and Mr. Blasik allegedly emailed themselves or downloaded onto a USB drive the above-described materials. ¶¶ *Id*. 37 & 42. Mr. Jensen was terminated at that time back in 2024 because his position was eliminated. *Id*. ¶ 42. As part of his separation agreement, Mr. Jensen represented that he had not engaged in and was not aware of any unlawful conduct relating to the business of Sagent. *Id*. ¶ 44. Plaintiff does not claim that Mr. Jensen emailed himself or downloaded to any personal device any Sagent confidential information.

"On September 1, 2025, FARCO-PHARMA sent Sagent a letter purporting to terminate the LSA prematurely as of June 30, 2026." *Id*. ¶ 112. Plaintiff alleges that on September 18, 2025, after communications with Mr. Szurgot and attorneys, Mr. Jensen filed the application to incorporate Farco USA, which was funded with $30,000, and that there were communications with FARCO-PHARMA about it in October 2025. *Id*. ¶¶ 109-115.

On October 14, 2025, Plaintiff terminated Mr. Szurgot and Mr. Blasik. *Id*. ¶ 116.

Plaintiff alleges claims under (a) the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3)(C) (Count 1), and (b) the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/4(b) (Count 2), and (c) for breach of fiduciary duty (Count 3), (d) unfair competition (Count 4), (e) civil conspiracy (Count 5), (f) breach of contract (Counts 6, 7 & 8), (g) tortious interference with contract (Count 9), (h) tortious interference with prospective economic advantage (Count 10), and (i) unjust enrichment (Count 11). Plaintiff seeks various forms of damages and other monetary relief under all of its purported causes of action. Plaintiff only seeks injunctive relief under the DTSA and ITSA, Counts 1 & 2, including "an injunction to prevent Defendants' further misuse

5

and/or misappropriation of Sagent's trade secrets, and to prevent the Individual Defendants from working on GLYDO for at least two years." *Id*. ¶¶ 154 & 167.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Id.* at 555.

## ARGUMENT

**I.  Counts 1 And 2 Must Be Dismissed Because Mere Possession Of Trade Secrets Does Not Violate The DTSA Or ITSA And The Injunctive Relief In Those Counts Seeking To Bar Employment Independently Fails For Inability To Allege Irreparable Harm.**

Plaintiff cannot proceed under the DTSA (Count 1) or ITSA (Count 2) for misappropriation of trade secrets because even assuming that the information Mr. Szurgot and Mr. Blasik allegedly emailed to personal email addresses and that Mr. Blasik downloaded to a personal USB drive qualify as trade secrets those acts do not constitute misappropriation. In addition, the injunctive relief requested in those counts seeking to bar Mr. Szurgot, Mr. Blasik, and Mr. Jensen from working with GLYDO for two years also must be dismissed for the independent reason that Plaintiff has failed to allege irreparable harm.

**A.  Plaintiff Fails To Allege Misappropriation.**

"Misappropriation can be shown one of three ways—by improper acquisition, unauthorized disclosure, or unauthorized use." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 819 (N.D. Ill. 2014). Plaintiff does not allege improper acquisition inasmuch as it alleges that Mr. Szurgot and Mr. Blasik obtained access to the alleged trade secrets during the normal course of their employment. *See, e.g.*, *Glob. Charter Servs., Inc. v. LaRocca*, No. 22 C 1849, 2023 WL 3292592, at *5 (N.D. Ill. Apr. 26, 2023) (improper acquisition not alleged because "the

amended complaint makes clear that the Former Employee Defendants acquired the trade secrets through the normal course of their employment"); *see also PetroChoice LLC v. Amherdt*, No. 22-CV-02347, 2023 WL 2139207, at *5 (N.D. Ill. Feb. 21, 2023) (similar).

Courts have made clear that emailing trade secrets to a personal email address before leaving an employer and taking trade secrets upon departure does not amount to improper acquisition, unauthorized disclosure, or unauthorized use because "mere possession of trade secrets" is not misappropriation. *See, e.g.*, *Glob. Charter Servs., Inc. v. LaRocca*, 2023 WL 3292592, at *6 (allegations that former employees while still employed sent to themselves trade secrets at their "personal email address" and then when leaving "kept two GCS laptops" containing trade secrets are not sufficient because "mere possession of trade secrets does not suffice . . . even when considered in conjunction with solicitations of former clients") (citation omitted); *see also Busey Bank v. Turney*, No. 21 C 2900, 2022 WL 92940, at *6 (N.D. Ill. Jan. 10, 2022) (similar).

Nor do allegations like Plaintiff's of "deception" by employees convert "mere possession" into misappropriation. *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1068 (N.D. Ill. 2020) ("Even if the Court were to accept PCA's contentions that the lack of return and the deletions are proof of Croner's deception, it still would only be able to find that Croner was in possession of the secrets."). Indeed, there would be even less of a basis to find misappropriation properly alleged here than in *Croner*, where it was asserted that the former employee not only "has deleted some PCA files from his computer [but also] has solicited some customers he serviced at PCA, which in turn has lost several significant customers to Welch in the wake of Croner's departure." *Id.* at 1067. Here, by contrast, it is not alleged that the Defendants have sold a single dose of any competing product and Plaintiff has not alleged anything other than it is continuing as FARCO-PHARMA's exclusive distributor of GLYDO to this day.

7

Furthermore, Plaintiff cannot rely on the "inevitable disclosure" doctrine because the nature of the alleged trade secrets claimed to be emailed and put on a USB drive, hospital contact lists, term sheets, and marketing materials, are the kind that an employee could choose to avoid using, negating inevitability. *See, e.g.*, *PetroChoice*, 2023 WL 2139207, at *1 & *6 (where trade secrets were "proprietary knowledge of [plaintiff's] customer relationships, pricing schedules and strategies, compensation structures, profit/loss figures, profit margins, proprietary marketing strategies and sales tactics, and supply and logistics information," inevitable disclosure was not alleged because the defendants could "could avoid using" the trade secrets in their similar roles at the competitor) (citation omitted); *see also Indus. Packaging Supplies, Inc. v. Channell*, No. 18 CV 165, 2018 WL 2560993, at *3 (N.D. Ill. June 4, 2018) (similar).

Plaintiff cannot rely on the disclosure of the "good cop bad cop" negotiation strategy for its DTSA or ITSA claim because that information does not come remotely close to qualifying as a *trade* secret as opposed to merely confidential information. First of all, this cannot be a trade secret because Plaintiff does not, nor can it plausibly, allege that it "expended substantial time or money in reaching the conclusion" to use the good cop bad cop strategy. *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1073 (7th Cir. 1992) (where plaintiff had not "expended substantial time or money in reaching the conclusion that using more than one trigger would be a good idea" it "was not a protectible trade secret"); *see Nilssen v. Motorola, Inc.*, No. 93 C 6333, 1997 WL 534670, at *3 (N.D. Ill. Aug. 22, 1997) ("[T]he amount of time, money or effort involved in developing confidential information is an important factor in determining whether that information may constitute a trade secret.") (citation omitted). Further, and perhaps even more fundamentally, information cannot qualify as a trade secret where it is "within the realm of general skills and knowledge in the relevant industry." *REXA, Inc. v. Chester*, 42 F.4th 652, 664 (7th Cir.

8

2022) (citation omitted). Here, of course, a "good cop bad cop" negotiation strategy is a "time-honored technique." *Negotiations among lawyers—Good cop/bad cop*, 4 Bus. & Com. Litig. Fed. Cts. § 42:41 (5th ed.); *see Saban v. Caremark Rx, L.L.C.*, 780 F. Supp. 2d 700, 710 (N.D. Ill. 2011) ("strategies used to negotiate" did not qualify as a trade secret). In sum, Counts 1 and 2 must be dismissed.

   **B. Plaintiff's Requests In Counts 1 & 2 For An Injunction Barring Work On Glydo Independently Fail For Inability To Allege Irreparable Harm.**

As set forth above, Counts 1 and 2 should be dismissed in their entirety. In addition, the requests in Counts 1 and 2 for injunctive relief seeking to prevent Mr. Szurgot, Mr. Blasik and Mr. Jensen from working on GLYDO for two years should be dismissed for the separate and independent reason that Plaintiff has not alleged irreparable harm.

As set forth above, inevitable disclosure cannot be properly plead here. As such, even if Plaintiff somehow could state a claim and impose liability under Counts 1 and 2, its request for an injunction "preventing Defendants from further misusing and/or misappropriating Sagent's trade secrets," Compl. ¶¶ 154 & 167, would fully address all of Plaintiff's interests in protecting its alleged trade secrets. Plaintiff has not and cannot identify any irreparable harm that could result if Mr. Szurgot, Mr. Blasik or Mr. Jenson later worked on GLYDO once the scheduled term of the LSA between Plaintiff and FARCO-PHARMA expires on December 31, 2026. Indeed, Plaintiff has sought monetary relief in all eleven counts of its complaint, including requests for damages in ten of those counts. Compl. ¶¶ 154, 167, 183, 194, 201, 216, 232, 243, 250, 256 & 269. As the Seventh Circuit has stated in the former employee and trade secret context, where the former employer has an "adequate remedy at law," it therefore "faces no irreparable harm." *DM Trans, LLC v. Scott*, 38 F.4th 608, 613 (7th Cir. 2022). What is more, as the Seventh Circuit also explained where a former employer allegedly lost "thirteen discrete customers," any "harm

9

stemming from lost customers or contracts may be quantifiable if the lost customers or contracts are identifiable." *Id*. at 618 (finding "an adequate remedy at law, and thus no irreparable harm") (citation omitted).

Here, the lack of irreparable harm is more clear. At most, if the Defendants were to replace Plaintiff as the distributor of GLYDO after the LSA expires as scheduled on December 31, 2026, only one customer would be lost and it would be identified. Plaintiff's request in Counts 1 and 2 for an injunction preventing Mr. Szurgot, Mr. Blasik and Mr. Jenson from working on GLYDO for two years should therefore be dismissed for the separate and independent reason that Plaintiff has not alleged irreparable harm. *See, e.g.*, *Cooper v. Durham Sch. Servs.*, No. 03 C 2431, 2003 WL 22232833, at *10 (N.D. Ill. Sept. 22, 2003) (dismissing claim for injunctive relief).

**II.     Counts 9 And 10 Should Be Dismissed Because Plaintiff Has Not Satisfied The Elements Of Its Tortious Interference Claims.**

Count 9, which purports to assert a claim for tortious interference with contract, should be dismissed because Plaintiff has not alleged that FARCO-PHARMA breached a contract with Plaintiff. Count 10, which purports to assert a claim for tortious interference with prospective economic advantage, should be dismissed both (1) because Plaintiff has not alleged that it had a reasonable business expectancy and (2) because Plaintiff has not alleged actual damage.

**A.     Count 9 Should Be Dismissed Because Plaintiff Fails To Allege That FARCO-PHARMA Breached A Contract With Plaintiff.**

To state a claim for "tortious interference with contractual relations, a plaintiff must plead: '(1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages.'" *Witherspoon Holdings, Inc. v. Coyote Logistics, L.L.C.*, No. 23-CV-16952, 2025 WL 2712180, at *5 (N.D. Ill. Sept. 23, 2025) (quoting *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005)).

10

As such, it is well-established that dismissal is required if the plaintiff has not alleged the "critical element" that the third party "breached" its contract with the plaintiff. *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 731 (7th Cir. 1999) (affirming dismissal of tortious interference with contractual relations claim because the plaintiff "failed to allege a critical element, namely that the third parties, [plaintiff's] customers, breached their contracts with it."); *see McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (similar); *Multi-Color Corp. v. Cuny*, No. 25 CV 3948, 2025 WL 3158169, at *5 (N.D. Ill. Nov. 12, 2025) (similar).

Here, Plaintiff has not alleged that FARCO-PHARMA breached any contract with Plaintiff. Because Plaintiff has failed to allege this "critical element," Count 9 should be dismissed. *See, e.g.*, *Int'l Mktg.*, 192 F.3d at 731.

**B.    Count 10 Should Be Dismissed Because Plaintiff Has Failed To Allege A Reasonable Business Expectancy.**

The elements necessary to state a claim for tortious interference with prospective economic advantage are "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007).

Alleging a "track record" of a contractual relationship with a party is insufficient to meet the reasonable expectancy element of this tort. *See, e.g.*, *CNTRST Debt Recovery v. Ybarra*, No. 21 C 2702, 2024 WL 1435099, at *5 (N.D. Ill. Apr. 2, 2024) (dismissing because a "reasonable expectancy requires more than YRY's hope that Union Bank would renew its loan") (citation omitted); *Automated Concepts Inc. v. Weaver*, No. 99 C 7599, 2000 WL 1134541, at *7 (N.D. Ill. Aug. 9, 2000) (expectancy element not properly plead because "a 'track record' of receiving work

11

from a particular customer in the past, in and of itself, does not establish a reasonable expectation" of another contract); *Int'l Serv. Assocs., Inc. v. Arco Mgmt. of Wash., D.C., Inc.*, No. 94 C 1807, 1994 WL 583302, at *7 (N.D. Ill. Oct. 21, 1994) (holding that "a 'track record' of HUD awarding contracts to ISA, standing alone, does not establish a reasonable expectation of ISA's entering into any particular future business relationship with HUD").

Because a "track record" is all Plaintiff has alleged here (and in fact Plaintiff has alleged that FARCO-PHARMA's supervisory board rejected a joint venture with Plaintiff, *see* Compl. ¶¶ 77 & 79), Plaintiff has failed to meet this element. *See, e.g.*, *CNTRST*, 2024 WL 1435099, at *5. Furthermore, Plaintiff has not alleged that there is any plan for Mr. Szurgot, Mr. Blasik, or Mr. Jensen or the recently incorporated Farco USA to engage in any joint venture similar to the one FARCO-PHARMA rejected with Plaintiff. Nor has Plaintiff alleged that they would even be capable of any such a joint venture as they are not alleged to have a business that "develops, sources, manufacturers and markets a range of medical products" like Plaintiff. *See* Compl. ¶ 7. Count 10 should therefore be dismissed for this reason alone.

      **C.**      **Count 10 Should Also Be Dismissed For The Additional Reason That Plaintiff Has Not Alleged That It Has Been Damaged By The Termination Of A Business Expectancy.**

Given that the LSA between Plaintiff and FARCO-PHARMA is not scheduled to terminate until December 31, 2026, Plaintiff is basing its tortious interference with a prospective economic advantage claim on its anticipation that FARCO-PHARMA may not work with Plaintiff after the LSA expires about a year from now. *Id.* ¶ 252. Such a theory based on speculation that the parties may stop doing business in the future fails to meet the "resulting damage" element of a tortious interference with prospective economic advantage claim. *See Dynabest Inc. v. Yao*, 760 F. Supp. 704, 713 (N.D. Ill. 1991) ("His allegation is the equivalent of the statement that he 'may' not be able to capitalize on a prospective economic advantage—a statement which has been found

to be insufficient to state a tortious interference with prospective economic advantage claim."); *see also Fine Line Distrib., Inc. v. Rymer Meats, Inc.*, No. 93 C 5685, 1994 WL 282299, at *4 (N.D. Ill. June 22, 1994) ("Without any concrete claims that a reasonable expectation of doing business with any particular individual or company has been defeated, Fine Line has not satisfied the elements of the intentional interference tort.") (citation omitted); *Sw. Whey, Inc. v. Nutrition 101, Inc.*, 117 F. Supp. 2d 770, 783 (C.D. Ill. 2000) (holding that where "the customer of the joint venture is still doing business with Southwest Whey or did for some time after the allegedly improper conduct . . . no damages therefore resulted from any interference"). Count 10 should therefore be dismissed for that additional reason as well.

### III. All Counts Against Mr. Jensen Should Be Dismissed Because Plaintiff Does Not Properly Allege Any Wrongful Conduct By Mr. Jensen.

"Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). As such, lumping "defendants" together is not proper pleading and must be rejected. *Id*. Further, "[a]llegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions." *Amerikal Prods. Corp. v. Cave*, No. 24 C 11292, 2025 WL 1883915, at *5 (N.D. Ill. July 8, 2025). Moreover, these principles are particularly apt where, as here, a former employer makes allegations against certain former employees based on their emails but lacks the same details as to other former employees. *See Busey*, 2022 WL 4079462, at *7 ("Given Busey's investigation and discovery of the Besler, Ommen-Welborn, Tjernagel, and Weidner emails, the Court does not find plausible Busey's unsupported suspicion that any of the other Former Employee Defendants took Busey's customer lists when they left.").

Here, Plaintiff does not properly allege that Mr. Jensen engaged in any misconduct. Plaintiff does not identify any Sagent confidential or trade secret information that Mr. Jensen supposedly emailed to any personal email account, downloaded to any personal device, or disclosed to anyone or used in any way. Nor does Plaintiff allege any facts demonstrating that Mr. Jensen knew about any Sagent materials Mr. Szurgot or Mr. Blasik emailed themselves or downloaded, all of which allegedly happened long after Mr. Jensen left Sagent when his position was eliminated in June 2024. Nor does Plaintiff identify any email or text, let alone any improper ones, between Mr. Jensen and Mr. Vollenbroecker, Ms. Aadahl, or anyone at FARCO-PHARMA before he left Sagent. In terms of facts, Plaintiff alleges only the following as to Mr. Jensen: that in a December 2023 text to Mr. Szurgot, Mr. Vollenbroecker referred to "your/[Jensen's] business case," Compl. ¶ 61; that Mr. Jensen worked at Sagent until June 2024 when his position was eliminated, *id*. ¶ 42; that as part of his separation agreement, Mr. Jensen represented that he had not engaged in and was not aware of any unlawful conduct relating to the business of Sagent, *id*. ¶ 44; and that on September 18, 2025, after communications with Mr. Szurgot and attorneys (and more than a year after he left Sagent), Mr. Jensen filed the application to incorporate Farco USA, which was funded with $30,000, and that there were communications with FARCO-PHARMA about it in October 2025. *Id*. ¶¶ 109-115.

As such, Counts 1 and 2 under the DTSA and ITSA should be dismissed as to Mr. Jensen for the additional reason (apart from those set forth above) that Plaintiff does not properly allege that Mr. Jensen acquired, disclosed or used any trade secrets. Count 3, for breach of fiduciary duty, should be dismissed because Plaintiff does not properly allege that Mr. Jensen competed with Sagent during his employment, knew about or failed to disclose to Sagent any facts related to any such competition, or otherwise breached any fiduciary duties. Count 4, for unfair competition,

14

as well as Counts 9 & 10, for tortious interference, and Count 11, for unjust enrichment, should be dismissed as to Mr. Jensen because Plaintiff does not properly allege that he engaged in any misappropriation of trade secrets, competition while employed at Sagent, or any other alleged interference or misconduct. Count 6 for breach of contract should be dismissed because Plaintiff does not properly allege that Mr. Jensen inappropriately disclosed any Sagent confidential information, engaged in conflicting employment, or knew about any unlawful conduct related to the business of Sagent, or otherwise breached any contractual obligations. Finally, Count 5, for civil conspiracy, should be dismissed as to Mr. Jensen because, even assuming Plaintiff has stated a claim of conspiracy against other Defendants, Plaintiff has not properly alleged that Mr. Jensen "joined the conspiracy and knew of its scope." *See Bank of Am.*, 725 F.3d at 818 (dismissing conspiracy claim); *see also Campbell v. Walker*, No. 4:25-CV-04037-SLD-RLH, 2025 WL 2177172, at *4 (C.D. Ill. July 31, 2025) (stating that "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy" and dismissing conspiracy claim) (citation omitted).

## CONCLUSION

Defendant's motion to dismiss Plaintiff's trade secrets and interference claims (Counts 1, 2, 9 & 10) and all claims against Mr. Jensen should be granted.

Dated: January 16, 2026                          Respectfully submitted,

                                                      **BENESCH, FRIEDLANDER,**
                                                      **COPLAN & ARONOFF LLP**

                                                      By: */s/ David A. Rammelt*
                                                      David A. Rammelt, Esq.
                                                      Andrew J. Jarzyna, Esq.
                                                      **BENESCH, FRIEDLANDER,**

**COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: (312) 212-4949
Facsimile: (312) 767-9192
drammelt@beneschlaw.com
ajarzyna@beneschlaw.com

*Counsel for the Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026, I electronically filed the above document with the Clerk of Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

*/s/ David A. Rammelt*_____
David A. Rammelt
